SMITH *et al.* v. MUSE *et al.*

(Division A.   Jan. 7, 1924.)

[98 So. 436.   No. 23432.]

WILLS.  *Devise to wife and children equally, with shares of children dying without issue to revert, held to vest fee in first takers.*

A testator disposed of the residue, of his estate by an item in his will in the following language: "I wish all the remainder of my property of whatever kind, real, personal or mixed, to be divided equally between my said wife and all my children by her begotten, share and share alike, and should any of my said children die leaving no heirs of their body surviving them, or descendants of such heirs, then it is my wish and will that the portion of my estate bequeathed to any such shall revert and go to the survivors of my said children, and my said wife, in equal shares." He died leaving surviving him his widow and six children. Question: What interest did the widow and children take? *Held:* By the first clause the widow and children were given the estate in fee share and share alike. By the other clause the testator

undertook to cut down the fee so given his children upon the contingency of each dying without issue, in which event his or her share is to go to the widow and surviving children, share and share alike, burdened as to the children's shares with the same contingency as their original shares. That the latter clause is void because violative of the two donee statute, section 2765, Code of 1906 (section 2269, Hemingway's Code). There fore the first clause stands, resulting in the widow and children taking the estate in fee share and share alike.

Aᴘᴘᴇᴀʟ from chancery court of Madison county.

Hoɴ. V. J. Sᴛʀɪᴄᴋᴇʀ, Chancellor.

Proceedings between J. P. Smith and others, and Martha Muse and others. From the decree rendered, the former appeal. Reversed and remanded.

*J. M. Greaves* and *H. B. Greaves,* for appellants.

The appeal is taken for the sole purpose of determining whether or not item four of the will of James L. Muse offends against the statutes of perpetuity then and now in force?

Testator's wish is manifestly to have his property continue in his family until the then living children, six in number, should die, provided each died without issue. This old gentleman, who owned great quantities of land, situated not only in Madison county, but in the southeastern part of this state, evidently wanted to build up an aristocracy and keep in his family his estate,˙so that it would descend to his children and grandchildren.,

Evidently the testator and his advisors did not keep abreast with the Acts of the legislature, changing our "Statute of Alienation," as it is termed in the Acts of 1856. See Hutchinson's Code, ch. 42, art. 1, 609, section 24. This law was the law of the state until the passage of the act, approved March 12, 1856—"Chapter 108. An act relating to Real Estate, Alienation and Partition. Acts of 1856, section 273. Estates in *fee-tail* are prohibited; and every estate shall be an estate in fee-simple: Provided, that any person may make a conveyance or a

devise of lands to a succession of donees then living, not
exceeding two; and to the heirs of the body of the remain-
derman; and etc.''

You will note that in Hutchinson's Code the words ''not
exceeding two'' do not appear and for the first time in our
law we have the alienation of an estate limited to the life
or lives of persons then living not exceeding two. You
will note that this will was executed on the 14th day of
May, 1856, and was not probated until 1857, so we see
that the will was drawn about two months after the law
was changed, and the Acts of 1856 governed.

Our own state reports abound with opinions dif-
erentiating one case from another, with voluminous writ-
ten opinions, covering pages, which serve to confuse the
mind on this point. Some of the opinions appear to be
in open conflict, but when considered carefully, may not
be so. However, one thing is set out and conceded by all
of them and that is the rule against perpetuities is not
a rule of construction, but a peremptory command of
Law. Its object is to defeat intention, therefore, the rule
is to be remorselessly applied.

Judge SMITH recognizes the above rule in his opinion in
*Henry* v. *Henderson*, 103 Miss. 69, citing authorities. In
the instant case, the intention of James L. Muse by the
article of his will, article four, here asked to be construed,
was that his property should be entailed to this extent, at
least; that the estate which was devised to his six children
and wife, should on the death of a child without issue sur-
viving, revert to his estate to again descend to the sur-
vivors and his wife, subject to the provisions of the will,
so that at the death of his fifth child without issue the
survivor took the entire estate. The only proposition
which the court has to determine in construing the sec-
tions is: Whether or not the testator intended by the pro-
visions of his will to devise his estate to a succession of
donees then living exceeding two.

In *Hudson* v. *Gray*, 58 Miss. 882, Judge COOPER's opin-
ion at the middle of page 893 construes the provisions of

that will, the language of which eliminating the word male is almost identically the same language as this will.

If my conception of James L. Muse's intention is correct, this land could be held by six children in succession and the limitation is therefore void as to this land.

I will cite the court to the following cases in the order that I woud like to have the court read them, namely: *Hudson* v. *Gray,* 58 Miss. 882, opinion page 886, et seq.; *Banking Company* v. *Fields,* 84 Miss. 662; *Nicholson* v. *Fields,* 111 Miss. 639; *Davenport* v. *Collins,* 95 Miss. 371, opinion last paragraph, page 374. See also the opinion in reply to the suggestion of errors in *Biby* v. *Broome,* 116 Miss. 70, On suggestion of errors, page 77. *Redmond* v. *Redmond,* 104 Miss. 512, is distinguishable. It is evident that the court based its opinion on the theory the will there created the devisees joint tenants, and it may be justified on that theory.

*Ray & Spivey,* for appellees.

Appellants' construction, which is fully presented in the brief filed herein, is that upon the death of each of the children of James L. Muse, without issue, the interest of such child passed to the survivors, subject to the same conditions and limitations under which it was held by the original donee. · This construction is untenable because for it' to stand it would be necessary for the court to add to the last clause of said item four the words ''subject to the same conditions and limitations under which said deceased child held it,'' and thus write into the will a provision which the testator certainly cannot be said to have clearly intended to incorporate therein.

The rule clearly announced in R. C. L. 206 and 207 is: ''In the construction of wills the object is not to seek flaws and declare them invalid, but to sustain them if legally possible, and the presumption is that the testator intended a lawful rather than an unlawful thing. . . . If two modes of construction are fairly open,

one of which will turn a bequest into an illegal perpetuity, while by following the other it will be valid and operative, the latter mode must be preferred.''

An analysis of the authorities relied upon by appellants discloses the fact that none of them are in point. In the construction of wills ''unless a case cited is in every respect directly in point, and agrees in every circumstance, it may have little or no weight with the court.'' 28 R. C. L. 206. *Ball* v. *Phelan,* 94 Miss. 293.

In *Hudson* v. *Gray,* 58 Miss. 882, the court, in attempting to reconcile two conflicting provisions of a will, was forced to accept the same construction that appellants are seeking here in an effort to determine the intention of the testator, but certainly did not hold that such a construction was the logical and obvious purport of the words used by testator.

In *Banking Company* v. *Fields,* 84 Miss. 662, the instrument before the court was a deed and not a will, and ''greater latitude is allowed in the construction of wills than in the construction of deeds.'' 28 R. C. L. 205. Furthermore, the question here presented was not before the court in that case, whatever was said thereon was *dictum,* and the conveyance there attacked was upheld.

*Nicholson* v. *Fields,* 111 Miss. 639, on a superficial examination, appears to support appellants' contention, but a careful examination discloses that in that case it was clearly the intention of testator to control the devolution through the lives of each of his three nephews, successively, and, on failure of issue in them, to vest the title in his grandsons.

In *Davenport* v. *Collins,* 95 Miss. 371, the will there before the court was overthrown because the testator attempted to include in his succession of donees a life tenant yet unborn.

*Bibby* v. *Broome,* 116 Miss. 70, is the only case cited in which the questions submitted and the facts upon which they are based are sufficiently in point to constitute any

sort of authority here, and that case is in point only in the event that the court should first hold that the conditions and limitations in item four of the will of James L. Muse follow the share of each of his children into the survivors.

The contention of appellants that the use of the word "revert" in item four of the will in the instant case necessitates or even warrants the construction urged by appellant, is untenable. It is true that the word was unadvisedly used in this connection, but nothing can be more certain than that it was not and could not be used in the highly technical sense contended for by appellants. It would be impossible for an estate to "revert" to persons who had never had any interest therein, and this is particularly true of a reversion in the sense contended for by appellants. This word, as used in wills, has been repeatedly defined by our courts, and we have been unable to find a single reported case in which the construction sought by appellants was given it. It has been almost universally defined as meaning "go to" or "pass to." See Words & Phrases, 1st and 2d Editions. The sense in which the word was used in the instant case was "to turn back" or "to return" from the wife or other heirs, except issue, of a deceased child of James L. Muse and pass to his surviving children.

The construction adopted by the chancellor, and upon which the decree in this case is based is that the will of James L. Muse created a valid executory devise,—that each of the children of James L. Muse took an estate in fee-simple conditional, the condition being the death of such child without issue surviving him, and that upon the death of such child without issue, that share passed to the survivors free from the conditions and limitations to which it was subject in the hands of the original donee— that is, that the survivors took such share of such decedent in fee-simple.

This construction is fully sustained by *Henry* v. *Henderson,* 103 Miss. 48. It will be noted that the views of

appellants were sustained in this case on the original hearing, but on suggestion of error, which was sustained, SMITH, C. J., said that the devise to Joseph Ditto Craig and Lorainne Craig, with cross-remainder and limitation over in event of death without issue, the ulterior limitees not being the right heirs of either the donor or the remaindermen, was good even if the provision for the support of Dr. Henry vested an estate in him so that his life must be counted in the succession of donees; that in the succession could be counted only the life of Dr. Henry and that of whichever of the other donees survived the other. *Armstrong* v. *Thomas,* 112 Miss. 272, however, is directly in point. In that case SMITH, C. J., fully sustains the decree in the instant case when he says: ''Each of these four devisees took a fee defeasible upon their deaths without issue, leaving one or more of the other devisees surviving them; the limitation over upon the death of each without issue to the survivor or survivors being a valid executory devise.''

Argued orally by *H. B. Greaves,* for appellants and *J. A. Teat,* for appellees.

ANDERSON, J., delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Madison county to settle the principles of the cause. The question involved is the correct construction and effect of item 4 of the will of James L. Muse, deceased. The trial court rejected the construction contended for by appellants and adopted at least in part that contended for by the appellees. The estate involved is land alone. Item 4 of said will follows:

''Item 4. I wish all the remainder of my property of whatever kind, real, personal or mixed, to be divided equally between my said wife and all my children by her begotten, share and share alike, and should any of my said children die leaving no heirs of their body sur-

viving them, or descendants of such heirs, then it is my wish and will that the portion of my estate bequeathed to any such shall revert and go to the survivors of my said children, and my said wife, in equal shares.''

The testator left surviving him his widow and six children. It is at once apparent that the widow took in fee on the death of the testator a one-seventh undivided interest in the estate attempted to be disposed of by said item 4 of the will. That is not questioned. The controversy is solely around the estate taken by the children. Appellants contend that said item 4 is violative of the two donee statute, section 2765, Code of 1906 (Hemingway's Code, section 2269), and that the result is that the widow and children took the estate covered by said item 4 in fee, share and share alike.

The two donee statute referred to above prohibits estates in fee tail and provides that every such estate shall be treated as in fee-simple, ''but any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee simple.''

In order to determine whether the statute is violated by this item of the will, it is a matter of first importance to understand the purpose and intention of the testator as therein expressed. As appears to the court, there is little difficulty in arriving at the intention of the testator. The language used is so clear that the purpose of the testator seems manifest. By this item the testator gave the residue of his estate to his widow and six children in fee, share and share alike. Then follows a clause by which he undertakes to cut down the fee or make the estate granted defeasible during the period from the date of his death until there is left only one surviving child, during which period the fee in the share given each child is subject to be defeated upon his or her death without issue, for it provides that in that event the surviving widow and children take the share of such decedent share

and share alike, the widow in fee and the children as their original shares came to them, subject to be defeated on death without issue, and this result is to be repeated on the death of each child without issue down to and including the fifth, at which time the last surviving child and the widow take the estate remaining in fee, which would be all of it provided the deceased children had died without issue; otherwise, if any or all of them had died leaving issue surviving. It was plainly the purpose of the testator that during said period no interest whatever in his estate should go to any except his widow and children and descendants of the latter. It is also evident that his purpose would be defeated if on the death of a child the survivors took a fee absolute in his or her share, for in that event on the death of any survivor thereafter without issue his or her share might go to others not descended from the testator. Putting it differently, the testator gave his wife and six children, all of whom survived him, the residue of his estate in fee. Then by another clause he undertakes to make the fee so given contingent as to the children's shares until there is only one child surviving. The donees, it is true, were all in being; that is not the trouble. It is that there were more than two successive donees or classes of donees. The testator went beyond the limit of the statute. To illustrate: The share of the child first dying without issue, if one should so die, one-seventh would descend in equal shares to the widow and surviving five children, the widow taking her share in fee, the children theirs as they took their original shares, subject to be defeated on death without issue. If the next dying should leave issue, his or her share would go to such issue in fee. And so on if the whole five should die alternating between leaving and not leaving issue, the result of course, would be at each death a definite state of title to the property. But if all five should die without issue, the title would be in a radically different definite state, and so it would if they should all die leaving issue. In other words, on the death of

each of the five children first dying, there is left a class of donees, one succeeding the other of course, each of which may sustain an entirely different relation to the title to the property disposed of from that of its predecessor. *Redmond* v. *Redmond,* 104 Miss. 512, 61 So. 552, does not sustain a contrary view. By the will in that case the testator simply gave his seven children a life estate measured by the life of the longest liver. The court held that on the death of each child the survivors were not successive donees in the sense of the statute, but that all seven constituted one donee, and therefore the will did not violate the two donee provision of the statute.

This case is ruled by *Hudson* v. *Gray,* 58 Miss. 882.

Gray, in his work, The Rule against Perpetuities (2d Ed. section 423), states the rule thus:

"Although the construction to be put upon an instrument is not affected by the existence of the rule against perpetuities, yet when there is a good absolute gift, and the settlor or testator goes on, in an additional clause, to modify the gift, and, by modifying it, makes it, in part, too remote, the modification is rejected *in toto,* and the original gift stands."

We hold therefore that the fee granted in the first clause to the wife and children share and share alike stands, while the last clause, which undertook to cut down the fee in certain contingencies, is void because violative of the two donee statute.

*Reversed and remanded.*